# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| v. | § § | SA-19-CR-526(3)-XR |
| JESUS MORENO COLIN | § § § § | |

## ORDER

On this day came on to be considered Defendant's motion to suppress (Dkt. No. 51) and motion to sever (Dkt. No. 52).

### Background

Prior to June 27, 2019, law enforcement officers were investigating Jose Manuel Trevino, a co-defendant in this case. A number of undercover transactions took place. During those transactions Trevino referred to his source of supply as "Vato."

On June 27, David Camacho, a DEA Task Force Officer acting in an undercover capacity, arranged to purchase a quantity of drugs from Trevino and they arranged a pickup at Trevino's residence on Madrid Street. At approximately 12:43 p.m., Agent Camacho drives to the residence on Madrid Street with audio and video running. Trevino calls Agent Camacho and asks where he is and Agent Camacho states he is nearby. Agent Camacho and Trevino also discuss that "Vato" would be dropping by the Madrid residence. Agent Camacho relays this information to other officers on the team.

At 12:45, Agent Camacho arrives to the location, notes the presence of a silver SUV with its engine running, and begins to identify to other officers those whom he sees at the Madrid

1

residence front yard, including a male wearing a red cap. Minutes earlier, DEA Group Supervisor Eric Putnam saw a male wearing a red cap exit a silver SUV and proceed to the residence carrying a plastic bag.

Trevino thereafter enters Agent Camacho's vehicle carrying a plastic bag.[1] Agent Camacho inspects the bag containing heroin, and then states that he is going to retrieve the payment monies from the trunk of his car. At 12:47, Agent Camacho exits the vehicle, delivers a pre-arranged signal, and a number of law enforcement officers converge on the scene. Gunshots are heard on the video, and at 12:50, an officer announces "all clear."

Trevino and Moreno Colin and all persons in the front yard of the Madrid residence are handcuffed and detained to preserve evidence and for officer safety. As soon as Trevino is handcuffed, he proceeds to tell officers that the male wearing the red cap is "the guy you want," that he was the source of supply, and that he was there to collect monies. A female found at the scene, co-defendant Brenda Sanmiguel, also made the same comments upon her arrest.

Defendant Moreno Colin was interviewed at the premises and Mirandized. The interview was conducted in English. Agent Camacho testified that Moreno Colin understood and spoke English "very well" and that he relayed he had been living in the United States since he was a teenager. During this five-minute interview Moreno Colin was calm and cooperative. Agent Camacho asked him who he was, what he was doing there at the residence, and whether he supplied Trevino with any illegal narcotics. Moreno Colin stated he was at the house "advising a friend" and denied supplying drugs to Trevino. Agent Camacho asked for consent to search Moreno Colin's vehicle, and consent was given. Moreno Colin stood nearby as the search was conducted

---

[1] DEA Group Supervisor Eric Putnam testified that it appeared to him that the bag delivered to Agent Camacho's vehicle was the same bag he saw being carried from the silver SUV by the male wearing the red cap.

and at no time requested that the search be stopped. A duffle bag with clothes, an identification card, and other items were found. Inside the duffle bag there was also a red ledger. The ledger contained names, prices, and slang terms for methamphetamine and heroin.

**Motion to Suppress**

Defendant argues that there was no probable cause for the search of his vehicle and that he did not provide consent for the search. Finally, he argues that even if consent was given for search of the car, no consent was given for a search of the ledger, and once the ledger was found either additional consent was necessary for the ledger to be opened or a search warrant was required to read the contents. The Government contends that probable cause existed for the search of the car (relying upon the automobile exception to the warrant requirement) and consent was given for the search.

**Analysis**

The automobile exception provides that "where there was probable cause to search a vehicle 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained.' *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999)." *United States v. Deleon*, 689 F. App'x 278, 279 (5th Cir. 2017). Here probable cause existed because prior to the June 27 arrests and search, Agent Camacho was told by Trevino that his source of supply was "Vato." On June 27, Agent Camacho is told by Trevino that "Vato" would be dropping by the Madrid residence. DEA Group Supervisor Putnam sees a male with a red cap exit a silver SUV with a plastic bag in hand and walk to the Trevino residence. The car's engine remains turned on. Thereafter, Trevino walks to Agent Camacho's vehicle with a plastic bag containing heroin.

"It is well settled that warrantless searches of automobiles are permitted by the Fourth Amendment if the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime. Whether an officer has probable cause to search a vehicle depends on the totality of the circumstances viewed 'in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search.'" *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995) (internal citations omitted). Under the "collective knowledge doctrine," the officer conducting a stop, search, or arrest based on probable cause need not "know all of the facts amounting to probable cause, as long as there is some degree of communication between the arresting officer and an officer who has knowledge of all the necessary facts." *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007); *see also United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999).

In the alternative, the Court finds that Moreno Colin voluntarily gave consent for the search of his vehicle. The Government must prove Moreno Colin voluntarily consented to the search by a preponderance of the evidence. The Fifth Circuit applies the following test to determine voluntariness: "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." *United States v. Glenn*, 931 F.3d 424, 430 (5th Cir. 2019).

Although detained, there is no evidence that any officers engaged in coercive police procedures. Officers provided the Defendant with his *Miranda* rights. Moreno Colin was only questioned for fifteen minutes or less. The Defendant was cooperative. Agent Camacho testified that the Defendant spoke and understood English. It is reasonable to assume that since Moreno

Colin had already removed any drugs from the vehicle, he accordingly thought that no incriminating evidence would be found.

Even if the Government demonstrates voluntary consent, the Court must still consider whether the search was within the scope of the consent granted. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Fla. v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803–04, 114 L. Ed. 2d 297 (1991). In *Jimeno*, the Supreme Court concluded that it is reasonable for an officer to consider a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car.

Defendant here concedes (if consent was found) that it was permissible for a search of the duffel bag, but contends it was unreasonable for an officer to open the ledger and view its contents (relying upon *Riley v. California*, 573 U.S. 373, 403, 134 S. Ct. 2473, 2494, 189 L. Ed. 2d 430 (2014)). In this case there was probable cause to believe that Moreno Colin was a supplier of narcotics. When he gave a general consent to a search of his vehicle it was reasonable for an officer to search not only for narcotics, but a drug ledger that would document these transactions. Unlike *Riley*, which implicated the viewing of the entirety of a cell phone's contents, the viewing of the ledger to readily ascertain it was indeed a drug ledger was not an undue invasion of the "privacies of life."

**Motion to Sever**

"[T]he federal judicial system has a preference for joint trials of defendants who are indicted together, and [a] defendant is not entitled to severance just because it would increase his

chance of acquittal or because evidence is introduced that is admissible against certain defendants…. Instead, a defendant must prove that: (1) the joint trial prejudiced him to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration. Severance is proper only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Reed*, 908 F.3d 102, 114 (5th Cir. 2018), cert. denied, 139 S. Ct. 2655, 204 L. Ed. 2d 285 (2019), and cert. denied, 139 S. Ct. 2658, 204 L. Ed. 2d 285 (2019). The Defendant fails to meet this standard.

## Conclusion

Defendant's motion to suppress (Dkt. No. 51) is DENIED. Defendant's motion to sever (Dkt. No. 52) is DENIED.

SIGNED this 29th day of October, 2019.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE